UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALIBU MEDIA, LLC,

        Plaintiff,

v.

JOHN DOES 1-9,

        Defendants.
_____/

Case No. 12-12587

District Judge Denise Page Hood

Magistrate Judge R. Steven Whalen

## OPINION AND ORDER

This is a copyright infringement case. Plaintiff Malibu Media, LLC ("Malibu") owns copyrights to various films, including 15 specific copyrighted works that are the subject of this lawsuit. These films can best be described as erotica.[1] Before the Court are Malibu's motion for leave to serve third party subpoenas prior to a Rule 26(f) conference [Doc. #2], and Motion for Expedited Hearing [Doc. #3]. For the reasons discussed below, the motion to serve subpoenas [Doc. #2] is GRANTED IN PART, and the motion for expedited hearing [Doc. #3] is DENIED.

Malibu does not know the names of the nine John Doe Defendants, but states that through its investigator, Tobias Fieser of IPP, Limited, it has identified each John Doe not by name, but by a unique Internet Protocol ("IP") address that was involved in the alleged

---

[1] The films carry provocative titles such as "Carlie Beautiful Blowjob," "Carlie Big Toy Orgasm," and "Leila Sex on the Beach." *See Motion*, Exhibit B (Doc. #2). Malibu Media films have been characterized as "pornographic," *see Malibu Media, LLC v. John Does 1-13*, 2012 WL 2800123, *2 (E.D. Cal. 2012), citing *Malibu Media, LLC v. John Does 1-10*, 2012 U.S. Dist. LEXIS 89286, *8-9 (C.D. Cal 2012), but since the term "pornography" has a legal connotation that is not at issue in this case, *see Miller v. California*, 413 U.S. 15 (1973), the term "erotica," while perhaps imparting an undeserved cachet, seems more apropos.

infringement (i.e., downloading a movie without paying) while participating in a

"BitTorrent swarm."[2]

---

[2] In *Third Degree Films v. Does 1-36*, 2012 WL 2522151, *1 -2 (E.D.Mich. 2012), Judge Michelson explained the BitTorrent protocol as follows:

"Although it may be used for improper purposes, the BitTorrent communication protocol itself is not without ingenuity. File sharing, as relevant here, involves the challenge of quickly distributing copies of a large digital file, e.g., a digital movie file like those found on a DVD, to a large number of people. Under more traditional file-sharing approaches, a digital file might reside on a few computers, e.g., servers, and those interested in the file would download a copy of the file from those limited sources. But, because these files tend to be large, and, perhaps, in high demand, a high load is placed on these limited source computers and their associated internet bandwidth. Thus, distribution to this so-called "flash crowd" may be slow.

"BitTorrent is one of several peer-to-peer file sharing protocols that address the inefficiencies in the client-server model by making those who download a file another source for the file. That is, sharing is among "peers." Users of the BitTorrent communication protocol also do not have to download an entire file before uploading parts of the file to others. This is because BitTorrent downloads a file in pieces, and by default, begins sharing pieces with other peers almost immediately. More specifically, the file distribution process using the BitTorrent protocol works as follows. Initially, an individual with BitTorrent software obtains a copy (perhaps legally) of the large digital file he wishes to share (in this case, a digital version of the Work). This individual, known in BitTorrent parlance as the "initial seeder," uses his BitTorrent software to divide the large file into thousands of smaller digital files known as "pieces." The software also creates a unique "digital fingerprint," a 40 character alpha-numeric code, for each piece. The initial seeder's BitTorrent software also creates an associated ".torrent" file which includes information about the original digital file, the pieces, and each piece's digital fingerprint. The initial seeder then posts this .torrent file—but not the large digital file to which it corresponds—to one of various websites on the internet that host .torrent files.

"When a BitTorrent user is interested in obtaining a copy of a particular digital file, e.g., the digital movie file at issue in this case, he can search the internet, perhaps using one of several torrent search engines, to find a .torrent file associated with the digital file of interest. Once a user downloads this .torrent file, the BitTorrent software, with the help of another internet-connected computer running BitTorrent software known as a "tracker," uses the information in the .torrent file to locate a "swarm" of peers sharing pieces of the particular digital file described by the .torrent file. Downloads may be from any peer that has already downloaded a piece of the particular digital file. This is possible because the BitTorrent

Mr. Fieser states that Internet Service Providers ("ISPs") keep track of the IP addresses assigned to their subscribers, and that "[o]nly the ISP to whom a particular IP address has been assigned for use by its subscriber can correlate the IP address to a real person, the subscriber of the internet service." *See Declaration of Tobias Fieser* (appended to motion).

The nine specific IP addresses and the ISPs associated with those addresses are attached to Malibu's motion. In order to determine the names and contact information for the John Doe Defendants, Malibu seeks leave to serve third party subpoenas on the five ISPs.

F. R. Civ. P. 26(d)(1) provides: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule)(1)(B), or when authorized by these rules, by stipulation, *or by court order"* (emphasis added). Malibu is correct that a district court has the discretion to permit the early issuance of a Rule 45 subpoena prior to a Rule 26(f) conference. This issue arises not infrequently in copyright infringement cases where the identity of the alleged infringer is not known. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2nd Cir. 2012). However, where, as here, there are multiple John Doe defendants,

---

software, by default, offers for download any piece of a digital file that it has previously downloaded. When a peer has copied a piece from another peer, the BitTorrent software verifies the authenticity of the piece by checking its digital fingerprint; once this is done, the peer becomes another source for that piece. Although a particular BitTorrent swarm may, over its lifetime, consist of thousands of peers, at any given moment each peer is only directly sharing with a small fraction of the swarm. Once a peer has downloaded all the pieces of the digital file of interest (possibly receiving pieces from dozens of different peers), the BitTorrent software re-assembles the pieces to a single digital (movie) file. The file is then usable, or in this case, viewable, by the BitTorrent user." (Footnote omitted).

there arises a question of improper joinder. *See Malibu Media, LLC v. Does 1-13*, 2012 WL 2800123 (E.D. Cal. 2012). Although Malibu alleges in its complaint, at ¶ 11, that the nine Defendants acted in concert with each other, and that the act of each Defendant was part of a connected series of transactions, similarly to *Malibu Media*, an attachment to this motion shows that the Defendants acted on different dates over about a four-week period, at different times of day and at various locations in Michigan. *Id*. at *4.

In *Malibu Media*, the court found good cause to permit early discovery, but limited that discovery to serving a Rule 45 subpoena to determine the identity and contact information for only one of the 13 John Doe defendants.  The court discussed two reasons for so limiting discovery. First, permitting the identification of "John Doe 1" would "allow plaintiff to name and serve a defendant in [the] case, conduct a Rule 26(f) conference, and then conduct discovery as to the remaining John Does." *Id*. at *3. Secondly, the court reasoned that "by limiting expedited discovery to John Doe 1, the court avoids prematurely ruling on the question of improper joinder, which appears endemic to BitTorrent file sharing cases such as this one." (*Citing OpenMind Solutions, Inc. v. Does 1–39,* No. C 11–3311 MEJ, 2011 WL 3740714, at *4–5 (N.D.Cal. Aug.23, 2011) (granting early discovery as to one Doe defendant but dismissing all but one of the 39 Doe defendants from the action without prejudice for improper joinder); *Diabolic Video Prods., Inc.,* 2011 WL 3100404, at *3–5 (granting early discovery as to one Doe defendant but severing all but one of the 2,099 Doe defendants from the action for improper joinder); *On The Cheap, LLC v. Does 1–5,011,* 280 F.R.D. 500–03, (N.D.Cal.2011) (dismissing 5,010 defendants without prejudice for improper joinder after expedited discovery was permitted and conducted)). *Id*. at *4. The court concluded that "discovery as to John Doe 1 may very well bolster plaintiff's allegations regarding proper

joinder, but at a minimum develop the record." *Id*.

The reasoning of *Malibu Media* strikes a proper balance between the Plaintiff's need for early discovery and the concerns regarding joinder that inhere in these cases. Therefore, taking the lead from that case, I will grant Plaintiff's motion in part, as follows:

1. Malibu may serve a Rule 45 subpoena on Bright House Networks, in order to identify the actual name and contact information for John Doe 1, who is associated with IP address 97.69.168.117. The subpoena will be limited to following information about John Doe 1: name, address, telephone number, and email address. A copy of this Opinion and Order shall be attached to any such subpoena.

2. Bright House Networks shall in turn serve a copy of the subpoena and a copy of this order on the subscriber, defendant John Doe 1, within 30 days from the date of service of the subpoena on the ISP. The ISP may serve the subscriber using any reasonable means, including written notice sent to the subscriber's last known address, transmitted either by first-class mail or via overnight service.

3. Nothing in this order precludes the ISP or defendant John Doe 1 from challenging the subpoenas consistent with the Federal Rules of Civil Procedure and this court's Local Rules. However, any such challenge, such as a motion to quash the subpoena or a motion for a protective order, shall be filed before the return date of the subject subpoena, and the return date shall be no earlier than 60 days from the date of service of the subpoena on the ISP.

4. If the ISP or the subscriber files a motion to quash or a motion for a protective order, the ISP shall preserve the information sought by the subpoena pending resolution

of such a motion.

5. Any information disclosed to plaintiff by the ISP may only be used by plaintiff for the purpose of protecting its rights under the Copyright Act, 17 U.S.C. §§ 101 et seq.[3]

Finally, the motion for expedited hearing is DENIED. In support of this motion, Malibu proffers the declaration of Tobias Fieser, who states, at ¶ 11, "Many ISPs only retain the information sufficient to correlate an IP address to a person at a given time for a very limited amount of time." In *Malibu Media v. Does 1-13, supra* at *3, fn. 11, the court rejected the same allegation by Mr. Fieser:

> "The declaration of plaintiff's investigator, Tobias Fieser, states: 'Many ISPs only retain the information sufficient to correlate an IP address to a person at a given time for a very limited amount of time.' (Fieser Decl. ¶ 10.) Fieser's statement is unexplained, unsupported by any documentation, and so general as to be of little to no value."

Likewise, I find that Mr. Feiser's statement is insufficient to support Malibu's

---

[3] There is nothing before me in this case to suggest that Malibu has ulterior or extrajudicial motives in seeking disclosure of the John Doe Defendants. However, numerous courts have remarked on what they have seen as chicanery in these cases. *See Malibu Media* at *2, fn. 10 (noting "some growing concern among district courts about these sorts of expedited discovery matters"). In *Malibu Media, LLC v. John Does 1-10*, 2012 WL 5382304 (C.D. Cal. 2012), the court remarked:

> "The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it. "

*See also Malibu Media, LLC v. Does 1–5,* 2012 WL 2001968 at *1 (S.D.N.Y. 2012) (permitting limited discovery but stating that the court "shares the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded").

request for an expedited hearing.

Accordingly, Malibu's motion for leave to serve third party subpoenas prior to a Rule 26(f) conference [Doc. #2] is GRANTED IN PART, consistent with the terms set forth above.

Malibu's motion for expedited hearing [Doc. #3] is DENIED.

IT IS SO ORDERED.

                                                **s/ R. Steven Whalen**
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Date: January 11, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 11, 2013.

                                                s/Johnetta M. Curry-Williams
                                                Case Manager